NO. 4-04-1055      Filed: 12/12/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| DAVID L. NEFF, | ) | No. 03CF207 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John B. Huschen, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

Following a November 2004 stipulated bench trial, the trial court convicted defendant, David L. Neff, of possession of a controlled substance (15 grams or more but less than 100 grams of a substance containing methamphetamine) (720 ILCS 570/402(a)(6.5) (West 2002)) (count I) and possession of a controlled substance with intent to deliver (15 grams or more but less than 100 grams of a substance containing methamphetamine) (720 ILCS 570/401(a)(6.5)(A) (West 2002)) (count II). The court later sentenced him to 10 years in prison on the possession-with-intent-to-deliver conviction and imposed fines totaling $10,577. (The court did not enter judgment on the other conviction, having determined that it merged into defendant's conviction for possession with intent to deliver.)

Defendant appeals, arguing that (1) the trial court erred by denying his motion to suppress the items seized from his car following his arrest for driving with a suspended driver's

license and (2) he is entitled to a $200 credit against his fines, pursuant to section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 2002)). Because we agree only with defendant's second argument, we affirm as modified and remand with directions.

## I. BACKGROUND

Following defendant's January 2004 indictment on the two drug charges, he filed a motion to suppress the evidence seized from his car following his arrest. At an April 2004 hearing on that motion, the only witness was El Paso police officer Joseph Holt, who testified that on the morning of December 31, 2003, he was driving his police car in El Paso when he saw defendant driving a car. Holt recognized defendant because two days earlier he had responded to a domestic call that involved defendant and his girlfriend. Holt knew that defendant's driver's license was suspended. When defendant pulled his car into a parking space at a local park, Holt followed and activated his overhead lights. Defendant got out of his car, but Holt directed him to return, and defendant complied.

Holt explained to defendant why Holt had followed him and that Holt was going to confirm the status of defendant's driver's license. After confirming that defendant's driver's license was suspended, Holt placed defendant under arrest. Before placing defendant in handcuffs, Holt allowed him to get out of his car and throw a donut wrapper away in a garbage can located a few feet from the squad car. When defendant did so,

- 2 -

Holt noticed that he also pulled something out of his pocket and threw it away with the donut wrapper.

Holt then placed defendant in handcuffs and asked him to sit in the squad car. Holt informed defendant that he would be conducting a search of defendant's car, and when he did so, he found drug paraphernalia in the front passenger compartment. Holt then went to the garbage can and retrieved the item defendant had thrown in there, along with the donut wrapper. That item was a Ziploc Baggie, which contained a small white rock. The garbage can was otherwise empty. The white rock field-tested positive for methamphetamine.

Holt then asked defendant if there was anything else in his car that Holt should know about, and defendant replied that, "[i]f there was anything else in the car, it would be in the black bag in the back." Holt returned to defendant's car and found a gym bag in the backseat. The bag contained several large Ziploc Baggies with white residue, several hypodermic needles, a digital scale, pipes, and other miscellaneous items. The residue field-tested positive for methamphetamine.

The parties later submitted written arguments to the trial court in support of their respective positions regarding defendant's motion to suppress evidence. Defendant argued that the search was unreasonable and in violation of the fourth amendment because it was conducted pursuant to the El Paso police department's inventory policy, which did not pass constitutional muster. The State argued that the search of the car's passenger

compartment was lawful as incident to defendant's arrest.  In a
June 2004 written order, the trial court agreed with the State
that Holt had authority to search defendant's car incident to
defendant's arrest.  In view of that ruling, the court declined
to address defendant's inventory-policy arguments.

In reaching its decision, the trial court discussed the
then-recent opinion of the Supreme Court of Illinois in People v.
Stehman, 203 Ill. 2d 26, 783 N.E.2d 1 (2002), as follows:

"Where the officer initiates contact with the
defendant either by actually confronting the
defendant or by signaling confrontation with
the defendant while the defendant is still in
the automobile and the officer subsequently
arrests the defendant (regardless of whether
the defendant has been removed from or has
exited the vehicle) a subsequent search of
the automobile's passenger compartment falls
within the scope of [New York v. Belton, 453
U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860
(1981),] and will be upheld as reasonable.
Where the defendant has voluntarily exited
the automobile before the officer initiated
contact with him, the facts do not fit within
[Belton's] bright[-]line rule. [The defendant
in Stehman] had voluntarily exited his auto-
mobile prior to the police confrontation and

as a result, the Supreme Court of Illinois found the subsequent search of the passenger area of [the defendant's] vehicle to be unreasonable.

The facts here are distinguishable from <u>Stehman</u>.  A routine traffic stop was conducted by Officer Holt upon seeing an individual he knew to [have a] suspended [license].  Based on the suspended driving privileges of the defendant, he was placed under arrest and removed from his vehicle to be transported to the jail.  Although the police officer allowed the defendant to freely move about and around his vehicle, he was always under the control of the officer.  The search [of] the passenger area of defendant's vehicle incident to his arrest was therefore reasonable."  (Emphases in original.)

In November 2004, defendant waived his right to a jury trial, and the parties proceeded to a stipulated bench trial.  The stipulated testimony consisted of the following:  (1) the transcript of Holt's testimony from the hearing on the motion to suppress, (2) a laboratory report regarding the items seized following defendant's arrest, which indicated that the substance seized weighed 19.6 grams and tested positive for methamphetamine, (3) Holt's testimony that in a postarrest interview,

defendant admitted that he had sold methamphetamine, and (4) an El Paso police officer's testimony regarding the chain of custody as to the items seized from defendant's car. The trial court accepted the stipulation, found defendant guilty, and sentenced him as earlier stated.

This appeal followed.

## II. ANALYSIS

### A. The Search of Defendant's Car Incident to His Arrest

Defendant first argues that the trial court erred by denying his motion to suppress the items seized from his car. Specifically, he contends that (1) the search incident to arrest in this case did not possess the necessary strict spatial and temporal limitations in relation to the arrest that allegedly justified the search and (2) the court erred by determining that Stehman was distinguishable.

### 1. Standard of Review

"Review of a motion to suppress presents both questions of law and fact." In re Christopher K., 217 Ill. 2d 348, 373, 841 N.E.2d 945, 960 (2005). A trial court's credibility determinations and factual findings will be upheld unless they are against the manifest weight of the evidence. Christopher K., 217 Ill. 2d at 373, 841 N.E.2d at 960. "However, the ultimate legal question of whether the evidence should be suppressed is reviewed de novo." Christopher K., 217 Ill. 2d at 373, 841 N.E.2d at 960. "The defendant bears the burden of proof at a hearing on a motion to suppress." People v. Gipson, 203 Ill. 2d 298, 306, 786 N.E.2d

- 6 -

540, 545 (2003).

 2. "Temporal and Spatial Concerns" in This Case

The record makes clear that defendant's claimed "temporal and spatial concerns" have no basis.  All of the events Holt testified about happened during an otherwise routine traffic stop during which defendant's car was not moved.  Further, the record suggests that the entire interaction between defendant and Holt lasted only a matter of minutes.  We are not sure at what point a search that is otherwise lawful as incident to a defendant's arrest becomes unlawful due to the passage of time, but whatever time limit may exist, it was not close to being met under the circumstances of this case.

 3.  The Supreme Court of Illinois Decision in Stehman

In its thoughtful written opinion, the trial court discussed the supreme court's decision in Stehman at length. Because we believe that Stehman may no longer be good authority, we provide the following analysis.

Stehman, a 2002 opinion, is the most recent decision of the Supreme Court of Illinois to address the search of a vehicle incident to the driver's arrest.  The Stehman court wrote, in pertinent part, the following:

> "In New York v. Belton, 453 U.S. 454, 460, 69
> L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864
> (1981), the Court addressed the applicability
> of [the search-incident-to-arrest] doctrine
> to searches of automobiles, holding that

'when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.'

By applying the bright-line rule that the passenger compartment lies within the reach of the arrested occupant, Belton sought to avoid case-by-case evaluations of whether the arrestee's area of control within the automobile extended to the precise place where the officer found the weapon or evidence. [Citation.] Indeed, 'the Court in Belton "remarked upon the desirability of a rule under which police could in most instances reach a correct determination beforehand, and the undesirability of litigation in every case over the existence of supporting reasons."' [Citations.] This court [citation] adopted the bright-line rule of Belton, and the courts of this state have consistently applied this bright-line principle to analogous situations. ***

***

The issue presented in the case at bar is whether Belton's bright-line rule extends

to a situation where the first contact the defendant has with the officer occurs after exiting the vehicle." Stehman, 203 Ill. 2d at 34-36, 783 N.E.2d at 5-6.

The supreme court ultimately held that Belton's bright-line rule does not apply where a suspect has voluntarily exited his vehicle and begun walking away from it before the officer initiated contact with him. Stehman, 203 Ill. 2d at 37, 783 N.E.2d at 7.

    4. The United States Supreme Court Decision in Thornton

In Thornton v. United States, 541 U.S. 615, 158 L. Ed. 2d 905, 124 S. Ct. 2127 (2004), the United States Supreme Court addressed the same issue that was raised in Stehman--namely, whether Belton's bright-line rule extends to a situation where the first contact a suspect has with an officer occurs after the suspect exits his vehicle. In Thornton, the Supreme Court answered that question "yes," explaining as follows:

> "We *** held [in Belton] that 'when a police-man has made a lawful custodial arrest of the occupant of an automobile, he may, as a con-temporaneous incident of that arrest, search the passenger compartment of that automo-bile.' [Belton, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864.]
>
> In so holding, we placed no reliance on the fact that the officer in Belton ordered the occupants out of the vehicle, or initi-

- 9 -

ated contact with them while they remained within it. *** There is simply no basis to conclude that the span of the area generally within the arrestee's immediate control is determined by whether the arrestee exited the vehicle at the officer's direction, or whether the officer initiated contact with him while he remained in the car. ***

In all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle. An officer may search a suspect's vehicle under Belton only if the suspect is arrested. [Citation.] A custodial arrest is fluid and '[t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty' [citations]. The stress is no less merely because the arrestee exited his car before the officer initiated contact, nor is an arrestee less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of, but still in control of, the vehicle. In either case, the officer faces a highly volatile situation.

It would make little sense to apply two different rules to what is, at bottom, the same situation.

In some circumstances it may be safer and more effective for officers to conceal their presence from a suspect until he has left his vehicle. Certainly that is a judgment officers should be free to make. But under the strictures of petitioner's proposed 'contact initiation' rule, officers who do so would be unable to search the car's passenger compartment in the event of a custodial arrest, potentially compromising their safety and placing incriminating evidence at risk of concealment or destruction. The Fourth Amendment does not require such a gamble.

*\*\**

*\*\** The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which <u>Belton</u> enunciated. Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to

preserve evidence by searching the entire passenger compartment.

   *** So long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to the arrest."  (Emphasis in original.)  Thornton, 541 U.S. at 620-24, 158 L. Ed. 2d at 913-15, 124 S. Ct. at 2130-32.

### 5. Current Illinois Law

Given the decision of the United States Supreme Court in Thornton, the question arises as to the current state of Illinois law regarding the search of a suspect's vehicle incident to his arrest.  In other words, does Stehman remain good law after the Thornton decision?

In People v. Dieppa, 357 Ill. App. 3d 847, 852, 830 N.E.2d 870, 874-75 (2005), the Second District Appellate Court addressed this issue and wrote the following:

   "Stehman predates Thornton, and, argu-ably, the cases conflict.  The issue, as framed by the Stehman court, was 'whether Belton's bright-line rule extends to a situa-tion where the first contact the defendant has with the officer occurs after exiting the vehicle.'  Stehman, 203 Ill. 2d at 36[, 783 N.E.2d at 6].  The court found that Belton

- 12 -

did not apply in such circumstances, but qualified its rule, noting that the occupants of a vehicle cannot avoid a <u>Belton</u> search by merely stepping outside a vehicle as officers approach but that, on the other hand, the police may not artificially create a situation as a pretext for a search. <u>Stehman</u>, 203 Ill. 2d at 39, 41[, 783 N.E.2d at 9]. <u>Thornton</u> flatly held that <u>Belton</u> governs even when an officer does not make contact until the person arrested has left the vehicle. Arguably, then, given our supreme court's adherence to the lockstep doctrine [citation], <u>Stehman</u> is no longer good law in the wake of <u>Thornton</u>.

However, given the details of the supreme court's opinion in <u>Stehman</u>, it appears that the supreme court may very well decide to interpret our state constitution more broadly [than the United States Supreme Court interpreted the federal constitution in <u>Thornton</u>]."

Since <u>Dieppa</u> was decided, the Supreme Court of Illinois has addressed whether it would continue to adhere to the lockstep doctrine, in which the supreme court interprets and applies the search and seizure provision of article I, section 6, of the

- 13 -

Illinois Constitution of 1970 in lockstep with the United States Supreme Court's interpretation and application of the search and seizure clause of the fourth amendment to the United States Constitution.  In <u>People v. Caballes</u>, 221 Ill. 2d 282, 316-17, 851 N.E.2d 26, 46 (2006), the supreme court stated its continued adherence to that doctrine, which it referred to as the "limited lockstep approach," explaining as follows:

"We conclude that the search and seizure clause of article I, section 6, of the state constitution, as construed under our limited lockstep approach, strikes the proper balance between protecting the people from unreasonable intrusion by the state and providing the people with effective law enforcement.  We will not depart from the intent of the framers of the Illinois Constitution of 1970 or the understanding of voters who adopted it-- to the extent we are able to discern it from the language used, the committee comments, and the debate--to tip the balance in favor of expanding the scope of the right to be free from unreasonable searches and seizures that is already guaranteed by the fourth amendment.  The expansion of the protections guaranteed by the state constitution can be brought about by amending the constitution or

by the enactment of statutes by the General Assembly. Such expansion of rights, however, is not the function of this court."

Based upon the supreme court's decision in <u>Caballes</u>, we disagree with <u>Dieppa</u> that the Supreme Court of Illinois may very well choose to interpret our state constitution more broadly regarding the search of a suspect's vehicle incident to his arrest than the United States Supreme Court has interpreted the federal constitution. For the reasons expressed by the Supreme Court of Illinois in <u>Caballes</u>, we believe that our supreme court will apply the limited lockstep doctrine, and adopt the reasoning and holding of the United States Supreme Court in <u>Thornton</u>. Accordingly, consistent with <u>Thornton</u>, we conclude that the trial court did not err by denying defendant's motion to suppress the items seized from his car incident to his arrest.

## B. Credit Against Fines

Defendant also argues that he is entitled to a $200 credit against his fines based upon the 40 days he spent in jail before sentencing. See 725 ILCS 5/110-14 (West 2002). The State concedes this argument, and we accept the State's concession. Accordingly, we affirm defendant's conviction and remand with directions to the trial court to correct the sentencing order to give defendant credit against his fines.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment as modified and remand with directions.

- 15 -

Affirmed as modified and remanded with directions.

APPLETON and MYERSCOUGH, JJ., concur.