# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Daniel*, 2013 IL App (1st) 111876

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JASON DANIEL, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1876 |
| Filed | March 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in granting defendant's motion to quash his arrest and suppress evidence, despite defendant's contention that he was arrested without probable cause when he was handcuffed after being stopped for an improper lane change, since defendant was observed making an improper lane change, he was in a dangerous neighborhood and officers had recently been shot there, he made furtive movements after he curbed his vehicle, and he refused to comply with orders to raise his hands, and under the circumstances, handcuffing defendant was justified by the officer's reasonable concern for his safety and the *Terry* stop was not converted into an arrest. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-16227; the Hon. Nicholas R. Ford, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Janet C. Mahoney, Veronica Calderon Malavia, and Christine Cook, Assistant State's Attorneys, of counsel), for the People. |
|---|---|
| | Michael J. Pelleiter, Alan D. Goldberg, and Darren E. Miller, all of State Appellate Defender's Office, of Chicago, for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion. Presiding Justice Lampkin concurred in the judgment and opinion. Justice Hall specially concurred, with opinion. |

## OPINION

¶ 1    Defendant Jason Daniel was arrested after police stopped his vehicle due to an improper lane change and discovered suspected cannabis in the vehicle. Defendant was charged with two counts of aggravated unlawful use of a weapon after police discovered a gun case containing a gun in the backseat of the vehicle. Defendant filed a motion to quash arrest and suppress evidence, which the trial court granted. The State appeals, and we reverse.

¶ 2                              BACKGROUND

¶ 3    Defendant was arrested on August 27, 2010, and was charged with two counts of aggravated unlawful use of a weapon. On March 24, 2011, defendant filed a motion to quash his arrest and suppress evidence, claiming that police arrested defendant without probable cause, an arrest warrant, or a search warrant.

¶ 4    During the suppression hearing on April 12, 2011, the defense presented two witnesses: Chicago police officers Frank Miceli and Jason Van Dyke. Miceli testified that on August 27, 2010, he was working with two other officers, Officer Van Dyke and Officer Zumski,[1] at approximately 11:10 p.m. when they stopped a vehicle at 75th Street and Stony Island Avenue for making an improper lane change. Miceli activated the emergency equipment on his marked police automobile and the vehicle was pulled to the curb approximately half a block later. Miceli and the other officers then approached the driver's side of the vehicle on foot.

¶ 5    Miceli testified that as they approached the vehicle, he observed "several furtive movements by the driver and occupant." Miceli explained that "[t]he driver mainly made several movements with his torso, going down, reaching to the floorboard." Miceli observed defendant, the driver, make this motion several times, beginning when Miceli was in his police automobile turning on the emergency lights. The occupants of the vehicle continued

_____

[1]Officer Zumski's first name is not included in the record on appeal.

to make movements after defendant pulled to the curb also and, "based on the movement that [he] saw from the defendant and the other occupants of the vehicle," Miceli was "afraid for [his] safety." Because he was afraid for his safety, Miceli drew his weapon when he exited the police automobile to approach defendant's vehicle.

¶ 6        As they approached the vehicle, Miceli "[g]ave several verbal directions" for everyone in the vehicle to raise their hands so the officers could view them. The passenger in the backseat immediately complied and placed his hands through the window, but defendant did not comply. Miceli testified that he could not observe defendant's hands, which were "down below."

¶ 7        Miceli testified that he "gave several 'hands up, hands up,' " but defendant refused to comply. Miceli ordered defendant to exit from the vehicle and opened the vehicle door for defendant to exit, handcuffing one of defendant's hands while he was still seated. Miceli completed handcuffing defendant and led him to the outside rear of the vehicle; the other two passengers were also ordered to exit the vehicle and were handcuffed.

¶ 8        Miceli testified that when defendant opened the door to exit the vehicle, Miceli observed a small plastic bag containing a green leaf-like substance on the floorboard of the driver's side of the vehicle, so Miceli placed defendant in custody; Miceli testified that the bag was approximately four inches long and an inch wide. After handcuffing defendant, Miceli searched him. The custodial search revealed another bag in defendant's pocket. Miceli testified that he could not observe the bags while defendant's door was closed. Miceli further testified that when defendant opened the door, Miceli did not observe a weapon in his hands.

¶ 9        Miceli testified that Officer Van Dyke performed an inventory search of the vehicle, during which Miceli was present. Miceli observed Van Dyke place a gun box on the hood of the police automobile.

¶ 10        Miceli admitted that he did not indicate in the case incident report of the event or defendant's arrest report that he ordered defendant to raise his hands or that he was unable to observe defendant's hands. Defendant was issued a ticket for the improper lane change.

¶ 11        Officer Van Dyke, the defense's second witness, testified that he performed the inventory search on the vehicle defendant was driving and recovered a black bag containing a locked black Taurus gun case. Van Dyke discovered those items in the backseat of the vehicle and placed them on the hood of the police vehicle. After reading defendant his *Miranda* rights, Van Dyke asked defendant if he wished to tell Van Dyke anything about the gun box, and defendant informed Van Dyke that " 'that's my gun and bullets. I was planning on going to the range.' " Defendant possessed a firearm owner's identification card and showed it to Van Dyke.

¶ 12        Van Dyke testified that the items were taken to the police station, where one of Van Dyke's partners cut the lock with a pair of bolt cutters and discovered a gun inside the box. The police did not attempt to obtain a search warrant prior to cutting the lock.

¶ 13        After both sides rested, the State argued that defendant's motion to suppress should be denied. During the State's argument, the trial court expressed its concern that "if they stopped you *** and they saw furtive movements in the car, they can ask you out of the car?" and that the police "got the cuffs on somebody before he finds out if they have a driver's

license and proof of insurance, which are legitimate questions. He's already got the guy in cuffs." The State argued that Miceli's conduct demonstrated his fear, and the court stated:

"I will acknowledge this, their fear is valid, because, you know I've been to 76th and Stony Island. There is all kinds of terrible stuff that happens over there. But, no matter how poorly people behave, they still got rights. No matter how dangerous a community can become, and certain communities become very dangerous, they still have the constitution that protects them, all right."

¶ 14    The State argued that when the police observed the movements of the vehicle's occupants and defendant failed to comply with Miceli's request to show his hands, the police then had a legitimate reason to detain defendant. The court responded, "He didn't detain him, he put handcuffs on him." The court also noted that it was "not at all deprecating how serious every traffic stop is. I understand that, completely ***. It's just that, you know, while a traffic stop and some other–I understand why–I think it makes perfect sense why he acted the way he did. *** They were riding around with weed in the car and a gun in the back seat, which certainly doesn't get you a membership in the Chamber of Commerce, but it doesn't put cuffs on you for a traffic stop either."

¶ 15    The State argued that the police "had every right" to handcuff defendant immediately, based on the "furtive movements" of the vehicle's occupants and defendant's refusal to show his hands. The State further argued that when defendant was handcuffed, he was not arrested but was merely detained for the officers' safety; he was arrested after the police discovered marijuana in the vehicle "seconds" later. The court responded, "For future reference, any time someone has cuffs on them, they're under arrest. The Supreme Court said that, and I think that stands."

¶ 16    The State asked the trial court not to "ignore" the fact that defendant was refusing to raise his hands, and the court responded, "You can't, but there was not active malfeasances either. He's just not completely compliant. I mean, it's just a traffic stop. They have to be patient with people too." The court continued:

"You don't just run–you don't go from he was squirming in his seat, to he's wearing handcuffs and everyone in the car is wearing handcuffs.

This is the third time I said this and the last time, I know why they react the way they do. There have been five or four police officers shot this year in that area. There was a young man that was shot who I know right in front of his house, probably less than eight blocks from where this happened. So I know why this happened. I know the community and the struggle that go up and down there. I know what they're going through down there. I know these officers, how much they see themselves everyday. I know all that, but in this circumstance, when I look–I look at what happened, they can't put handcuffs on them until they get something more than someone squirming in their seat.

There was no danger in this circumstance."

The State argued that when the officer opened the door and observed the marijuana on the floor, they had reason to detain defendant. The court stated:

"I think from a realistic stand point, I guess I agree with you from a life and safety of officers standpoint, I agree with you that they had a reason to ask him out of the car. I

-4-

can't, you know, you can't do this on–this is a traffic stop. You just can't like automatically start throwing cuffs on everybody in a car, you know, asking them out. I mean, we all get stopped for traffic offenses because we move around in the seat."

¶ 17    The court asked the State "[w]hat reasonable expectation did they have to believe that their safety was in jeopardy? It was just a traffic stop, moving." The court also asked the State, "How much movement makes it okay to take everyone out of the car and put handcuffs on them?" The court then granted defendant's motion to quash his arrest and suppress evidence, noting that "on a traffic stop, I don't see how you go from 0 to 70 in five seconds."[2]

¶ 18    On March 10, 2011, the State filed a motion to reconsider, claiming that the use of handcuffs constituted a reasonable detention pursuant to a lawful investigatory stop. On May 16, 2011, the trial court denied the State's motion to reconsider, and this appeal follows.

¶ 19                                ANALYSIS

¶ 20    On appeal, the State claims that the trial court erred because (1) the initial stop of defendant's vehicle was based on probable cause for a traffic violation, which allowed for a custodial arrest and search incident to that arrest; and (2) even under a *Terry* analysis, the police officers were permitted to handcuff defendant for officer safety.

¶ 21    Review of a trial court's ruling on a motion to quash arrest and suppress evidence presents mixed questions of fact and law. *People v. Lee*, 214 Ill. 2d 476, 483 (2005); *People v. Bennett*, 376 Ill. App. 3d 554, 563 (2007); *People v. Novakowski*, 368 Ill. App. 3d 637, 640 (2006). "[A] trial court's factual and credibility determinations are accorded great deference, and we reverse only if the findings are against the manifest weight of the evidence." *Novakowski*, 368 Ill. App. 3d at 640; see also *People v. Pitman*, 211 Ill. 2d 502, 512 (2004); *People v. Moore*, 378 Ill. App. 3d 41, 46 (2007). "This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *People v. Jones*, 215 Ill. 2d 261, 268 (2005). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995).

¶ 22    However, although we are deferential to findings of fact made by the trial court, we review *de novo* the application of the facts to the law to determine if suppression is warranted under those facts. *People v. Gherna*, 203 Ill. 2d 165, 175 (2003). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 23                        I. Probable Cause for Arrest

¶ 24    The State first argues that the initial stop of defendant's vehicle was based on probable

---

[2]The defense did not make a closing argument, since the trial court ruled immediately after the State's argument.

cause for a traffic violation, permitting Miceli to arrest defendant for the traffic violation and perform a search incident to that arrest. Defendant argues that the State's first argument has been forfeited because the State did not claim that it had probable cause to arrest defendant for the traffic violation during the suppression hearing before the trial court.

¶ 25    Issues not raised before the trial court are generally considered forfeited on appeal, a principle which applies to the State as well as to a defendant in a criminal case. *People v. O'Neal*, 104 Ill. 2d 399, 407 (1984). The forfeiture rule applies to the State when it is appealing a trial court's grant of a defendant's motion to suppress. *People v. Haywood*, 407 Ill. App. 3d 540, 551 (2011); *People v. Estrada*, 394 Ill. App. 3d 611, 626 (2009); *People v. Thompson*, 337 Ill. App. 3d 849, 854 (2003). When the State is appealing a trial court's grant of a motion to suppress, as in the case at bar, the State may not raise exceptions to the warrant requirement that were not first presented to the trial court. See *Haywood*, 407 Ill. App. 3d at 551; *People v. Vasquez*, 388 Ill. App. 3d 532, 543 (2009); *Thompson*, 337 Ill. App. 3d at 854.

¶ 26    After examining the record, we agree with defendant that the State did not make the argument that the police had probable cause to arrest defendant for the traffic violation during the suppression hearing before the trial court, or even in its motion to reconsider. The State acknowledges that it did not specifically argue the issue before the trial court, but claims that it was prevented from fully addressing its claims or making its arguments by the trial court's repeated interruptions and focus on the use of handcuffs. While the trial court did ask a number of questions and make comments during the State's closing argument, we cannot agree that the trial court's conduct "thwarted" the State's ability to present its argument and, accordingly, do not consider the State's first argument.

¶ 27    We further note that the State's argument that the police had probable cause to arrest defendant due to the traffic violation is based on the United States Supreme Court case of *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), in which the Court found that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender" and upheld the handcuffing and arrest of a driver for not wearing a seatbelt. Our Illinois Supreme Court is currently considering whether the Illinois Constitution should be interpreted in the same way as the federal constitution on this issue. See *People v. Fitzpatrick*, 2011 IL App (2d) 100463, *appeal allowed*, No. 113449 (Jan. 25, 2012). Since the issue is currently pending before the Illinois Supreme Court and because we find merit in the other grounds based on *Terry* enumerated below, we reverse the trial court's decision to grant the motion to suppress and do not consider the State's argument on the probable cause to arrest issue at this time.

¶ 28                                    II. Handcuffing for Officer Safety

¶ 29    The State's second argument is that, even under a *Terry* analysis, Miceli's handcuffing of defendant was proper because he was handcuffed for officer safety.

-6-

¶ 30                                                    A. *Terry* Stop

¶ 31    The fourth amendment to the United States Constitution generally protects citizens against unreasonable seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001). "A seizure occurs when the police, by means of physical force or show of authority, have in some way restrained the person's liberty." *People v. Perkins*, 338 Ill. App. 3d 662, 666 (2003). A vehicle stop implicates the fourth amendment because stopping a vehicle and detaining its occupants constitutes a "seizure" within the meaning of the fourth amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *People v. Jones*, 215 Ill. 2d 261, 270 (2005).

¶ 32    Generally, a seizure must be supported by probable cause. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *Sorenson*, 196 Ill. 2d at 432. However, a limited exception to the probable cause requirement for a seizure was recognized by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 22 (1968). Pursuant to *Terry*, a police officer may, under appropriate circumstances, briefly detain a person for investigatory purposes if the officer reasonably believes that the person has committed, or is about to commit, a crime. *Terry*, 392 U.S. at 21-22. This brief investigative detention is commonly known as a *Terry* stop. *People v. Lippert*, 89 Ill. 2d 171, 182 (1982). The United States Supreme Court has further determined that a vehicle stop, as in this case, is analogous to a *Terry* stop and, as a result, is generally analyzed under *Terry* principles. *Jones*, 215 Ill. 2d at 270 (citing *Knowles v. Iowa*, 525 U.S. 113, 117 (1998), *United States v. Sharpe*, 470 U.S. 675, 682 (1985), and *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)).

¶ 33    To justify a *Terry* stop, a police officer may detain a person without having probable cause to arrest; however, the officer must have a reasonable, articulable suspicion that the person detained has committed or is about to commit a crime. *Terry*, 392 U.S. at 21-22; *People v. Lee*, 214 Ill. 2d 476, 487 (2005). Under a "reasonable suspicion" standard, the evidence necessary to justify a *Terry* stop need not rise to the level of probable cause and can even arise when no violation of the law is witnessed; however, a mere hunch is insufficient. *People v. Thomas*, 198 Ill. 2d 103, 110 (2001); *People v. Edward*, 402 Ill. App. 3d 555, 562 (2010) ("It is well settled that the facts underlying a claim of reasonable suspicion need not rise to the level of probable cause and do not require an officer to actually witness a violation."). In sum, "[r]easonable suspicion is a less exacting standard than probable cause." *People v. Ward*, 371 Ill. App. 3d 382, 412 (2007).

¶ 34    When a defendant files a motion to quash his arrest and suppress evidence, claiming that there was an illegal search or seizure, the defendant has the burden of demonstrating the illegal search or seizure. *People v. Buss*, 187 Ill. 2d 144, 204 (1999). "However, '[w]arrantless searches are *per se* unreasonable; thus, when respondent challenges a warrantless search and demonstrates that he was doing nothing unusual at the time of the search, the State must demonstrate the legal justification for the search.'" *People v. Lawson*, 298 Ill. App. 3d 997, 1001 (1998) (quoting *In re C.K.*, 250 Ill. App. 3d 834, 836 (1993)).

¶ 35    In the case at bar, there is no dispute that the police officers' initial stop of defendant's vehicle was a lawful *Terry* stop. The police observed defendant commit a traffic violation in failing to use his turn signal to indicate a lane change and properly stopped the vehicle.

See *Jones*, 215 Ill. 2d at 271 (finding that the initial stop of the defendant's vehicle for inoperable tail lights was justified at its inception); *People v. Gonzalez*, 184 Ill. 2d 402, 413 (1998) (finding that the stop of a vehicle was valid where the police officer observed a traffic violation). Additionally, following the stop, the police were entitled to order defendant to exit the vehicle. *Gonzalez*, 184 Ill. 2d at 413-14 ("For over two decades it has been well established that following a lawful traffic stop, police may, as a matter of course, order the driver out of the vehicle pending completion of the stop without violating the protections of the fourth amendment." (citing *Pennsylvania v. Mimms*, 434 U.S. 106 (1977))). Thus, the only question at issue in the instant case is whether Officer Miceli's handcuffing of defendant transformed the *Terry* stop into an arrest.[3]

¶ 36                                        B. Use of Handcuffs

¶ 37    In the case at bar, the trial court told the State that "any time someone has cuffs on them, they're under arrest. The Supreme Court said that, and I think that stands." However, the trial court's statement is not an accurate statement of the law, which both parties acknowledge. Nevertheless, since we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct (*Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992)), we must consider whether the trial court correctly concluded that the evidence from the vehicle should be suppressed because the *Terry* stop was converted into an arrest when Miceli handcuffed defendant.

¶ 38    " '[T]here is no bright-line test for distinguishing between a lawful *Terry* stop and an illegal arrest.' " *People v. Arnold*, 394 Ill. App. 3d 63, 70 (2009) (quoting *United States v. Glenna*, 878 F.2d 967, 971 (7th Cir. 1989)). "[A] restriction of movement that is brief may amount to an arrest rather than a *Terry* stop if it is accompanied by use of force usually associated with an arrest, unless such use of force was reasonable in light of the circumstances surrounding the stop." *People v. Johnson*, 408 Ill. App. 3d 107, 113 (2010).

¶ 39    The use of handcuffs may convert a *Terry* stop into an arrest "because it heightens the degree of intrusion and is not generally part of a stop." *Johnson*, 408 Ill. App. 3d at 113; *People v. Wells*, 403 Ill. App. 3d 849, 857 (2010); *Arnold*, 394 Ill. App. 3d at 70. However, the fact that a police officer places an individual in handcuffs does not necessarily transform a *Terry* stop into an arrest. *Wells*, 403 Ill. App. 3d at 857; *People v. Nitz*, 371 Ill. App. 3d 747, 754 (2007). "Importantly, concerns for officer safety and the safety of the public can, in certain limited circumstances, justify handcuffing during a brief investigatory stop." *Wells*,

---

[3]We note that, although the parties analyze the issue under the assumption that Miceli observed the green leaf-like substance immediately after handcuffing defendant's hand, the record is not entirely clear as to the sequence of events, other than the fact that both happened nearly simultaneously. However, we analyze the issue in the same way as the parties do, since, if Miceli observed the green leaf-like substance prior to handcuffing defendant, he had probable cause to arrest defendant. See *People v. Walters*, 256 Ill. App. 3d 231, 238 (1994) (finding that police had probable cause to arrest the occupants of an automobile where the police officer observed marijuana in plain view on the front seat of the automobile).

403 Ill. App. 3d at 857; *Johnson*, 408 Ill. App. 3d at 113 ("handcuffing is proper during an investigatory stop only when it is a necessary restraint to effectuate the stop and foster the safety of the officers"); *Arnold*, 394 Ill. App. 3d at 71 ("there are situations in which concerns for the safety of the police officer or the public justify handcuffing the detainee for the brief duration of an investigatory stop").

¶ 40    When "arrest-like measures" such as handcuffing are employed, "they must be ' "reasonable in light of the circumstances that prompted the stop or that developed during its course." ' " *Nitz*, 371 Ill. App. 3d at 754 (quoting 4 Wayne R. LaFave, Search & Seizure § 9.2(d), at 304 (4th ed. 2004), quoting *United Stated v. Acosta-Colon*, 157 F.3d 9, 15 (1st Cir. 1998)). "If the use of such restraints is not reasonably necessary for safety under the specific facts of the case, their use will indicate that the encounter should be viewed as an arrest." *Arnold*, 394 Ill. App. 3d at 71.

¶ 41    In the case at bar, the State claims that the use of handcuffs did not transform the *Terry* stop into an arrest because Miceli handcuffed defendant for officer safety. We agree that, under the facts of this case, the use of handcuffs was reasonably necessary for safety. Furthermore, the trial court also specifically stated several times that the officers' fear during the traffic stop was "valid" and that it "ma[de] perfect sense why [Miceli] acted the way he did."

¶ 42    During the suppression hearing, Miceli testified that as they approached defendant's vehicle, he observed "several furtive movements by the driver and occupant." Miceli explained that "[t]he driver mainly made several movements with his torso, going down, reaching to the floorboard"; Miceli observed defendant make this motion several times. The occupants of the vehicle continued to make movements after defendant pulled to the curb and, "based on the movement that [he] saw from the defendant and the other occupants of the vehicle," Miceli was "afraid for [his] safety." Because he was afraid for his safety, Miceli drew his weapon when he exited the police automobile to approach defendant's vehicle.

¶ 43    Miceli further testified that, as they approached the vehicle, he "[g]ave several verbal directions" for everyone in the vehicle to raise their hands so the officers could view them. Defendant did not comply, and Miceli could not observe defendant's hands, which were "down below." Miceli testified that he "gave several 'hands up, hands up,' " but defendant refused to comply. Miceli ordered defendant to exit from the vehicle and opened the vehicle door for defendant to exit, handcuffing one of defendant's hands while he was still seated.

¶ 44    Additionally, during the suppression hearing, the trial court made several comments about the dangerousness of the neighborhood in which the traffic stop occurred, none of which were objected to by the parties. Specifically, the court stated that "I've been to 76th and Stony Island. There is all kinds of terrible stuff that happens over there," and sympathized with the police, stating:

"I know why they react the way they do. There have been five or four police officers shot this year in that area. There was a young man that was shot who I know right in front of his house, probably less than eight blocks from where this happened. So I know why this happened. I know the community and the struggle that go up and down there. I know what they're going through down there. I know these officers, how much they see

-9-

themselves everyday."

¶ 45 In sum, defendant (1) was present in a neighborhood that the trial court considered to be dangerous and in which several police officers had recently been shot; (2) made "several furtive movements" reaching toward the floorboard when he was pulled over; and (3) repeatedly refused to comply with the officers' requests to raise his hands, leaving his hands "down below," where Miceli could not observe them. We agree with the trial court that it "ma[de] perfect sense why [Miceli] acted the way he did" and handcuffed defendant. Since Miceli was reasonably concerned for his safety during the traffic stop, we cannot find that handcuffing defendant transformed the *Terry* stop into an arrest. Accordingly, the trial court's grant of defendant's motion to suppress must be reversed.

¶ 46 We find defendant's arguments to the contrary to be unpersuasive. Defendant argues that "[n]either [defendant] nor his passengers were suspected murderers, drug dealers, or gang members" and that the basis for the stop was "completely non-threatening," so there was no basis to believe that defendant was armed and dangerous. While defendant is correct that the police did not stop defendant's vehicle based on investigation of a violent crime, defendant fails to recognize that his actions after the police pulled his vehicle over led Miceli to fear for his safety. As noted, when measures such as handcuffing are employed, "they must be ' "reasonable in light of the circumstances that prompted the stop *or that developed during its course*." ' " (Emphasis added.) *Nitz*, 371 Ill. App. 3d at 754 (quoting LaFave, *supra*, at 304, quoting *Acosta-Colon*, 157 F.3d at 15). Here, it was defendant's actions during the course of the vehicle stop that led to the use of handcuffs: his "furtive movements" reaching to the floorboard; and his refusal to comply with Miceli's orders to show his hands, instead keeping them hidden. Thus, defendant's argument that the traffic violation was nonthreatening is unpersuasive.

¶ 47 Defendant also claims that Miceli did not articulate precisely what movements defendant made or why they caused him to fear for his safety. However, Miceli testified that "[t]he driver mainly made several movements with his torso, going down, reaching to the floorboard" and he characterized the movements of the vehicle's occupants as "furtive." We believe that this testimony sufficiently articulates the movements Miceli observed and the basis for his fear.

¶ 48 Defendant further argues that Miceli never testified that defendant's failure to show his hands played any part in Miceli's fear and actually handcuffed the individual who showed his hands, indicating that this conduct was unimportant. We find this argument unpersuasive. Miceli testified that he was afraid for his safety upon observing the movements of the vehicle's occupants. Defendant then repeatedly failed to comply with Miceli's orders to show his hands, instead keeping them hidden. At the very least, defendant's behavior confirmed Miceli's fear. Indeed, if defendant had complied with Miceli's orders and had shown his hands, it is likely that Miceli would not have been entitled to handcuff defendant, demonstrating the importance of defendant's conduct.

¶ 49 We also find defendant's reliance on *Johnson*, 408 Ill. App. 3d 107, to be unpersuasive. In that case, the defendant was a passenger in a vehicle stopped for a traffic offense and ran from the vehicle as police officers approached; a police officer followed the defendant and

-10-

handcuffed him. *Johnson*, 408 Ill. App. 3d at 109. The police officer "testified that the police officers put handcuffs on defendant because they were in a high-crime area, replete with general crime, narcotic and gang activity, and did not know what defendant had on his person or why he was fleeing." *Johnson*, 408 Ill. App. 3d at 110. After engaging in a thorough discussion of relevant case law, the *Johnson* court determined that handcuffing the defendant transformed a *Terry* stop into an arrest. The court noted that there was no indication that the police officer had any visual cues to lead him to suspect that the defendant possessed a weapon, nor was there any resistance by the defendant after he was apprehended that would necessitate the use of external restraint. *Johnson*, 408 Ill. App. 3d at 116. The court further noted that, while the defendant was apprehended in a high-crime area, the defendant did not match the description of any armed suspects and was not in the vicinity of a recent violent crime; the court pointed out that the vehicle in which the defendant was a passenger had been stopped for a traffic violation, not for investigation of a violent crime. *Johnson*, 408 Ill. App. 3d at 117.

¶ 50 The situation in the case at bar is quite different from the factual scenario present in *Johnson*, other than the fact that both occurred in high-crime neighborhoods. Here, defendant made several movements reaching to the floorboard after police activated their emergency lights and he repeatedly failed to comply with police requests to show his hands, instead keeping them hidden. This is not a situation in which the police handcuffed defendant simply because he was in a high-crime area but instead is a case in which defendant engaged in conduct that led the police to fear for their safety. Accordingly, we find *Johnson* distinguishable from the case at bar.

¶ 51 Finally, defendant makes several arguments in which he relies on case law concerning the propriety of pat-down searches. However, in the case at bar, there is no pat-down search at issue on appeal. Thus, we have no need to address the cases cited by defendant.

¶ 52                                                    CONCLUSION

¶ 53 We find that the trial court erred in finding that the use of handcuffs during the traffic stop of defendant's vehicle transformed the stop into an arrest. The police officer handcuffed defendant for officer safety after defendant made several movements to the floorboard of the vehicle and repeatedly failed to comply with police orders to show his hands, instead keeping them hidden. Accordingly, defendant's motion to suppress should have been denied.

¶ 54 Reversed and remanded.

¶ 55 JUSTICE HALL specially concurring.

¶ 56 I concur in the result, but write separately to emphasize that the use of firearms, handcuffs, and other forceful techniques during an investigative *Terry* stop is warranted only if the facts available to the officer at the moment of the seizure or search would warrant a man of reasonable caution to believe that the action taken was appropriate. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). "[W]hen arrest-like measures (such as handcuffing) are employed,

-11-

they must be ' "reasonable in light of the circumstances that prompted the stop or that developed during its course." ' " *People v. Nitz*, 371 Ill. App. 3d 747, 754 (2007) (quoting 4 Wayne R. LaFave, Search & Seizure § 9.2(d), at 304 (4th ed. 2004), quoting *United States v. Acosta-Colon*, 157 F.3d 9, 15 (1st Cir. 1998)).

¶ 57        "Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches ***." *Terry*, 392 U.S. at 22. "[W]hile it may be tempting to relax [the probable cause requirements of the fourth amendment] when a defendant is believed to be guilty, the standards we prescribe for the guilty define the authority of the police in detaining the innocent as well." *United States v. Sharpe*, 470 U.S. 675, 719 (1985) (Brennan, J., dissenting).