2021 IL App (1st) 191901-U

No. 1-19-1901

December 14, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 7356 |
| | ) | |
| CHARLES EVANS, | ) | Honorable |
| | ) | Michael J. Kane, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

ORDER

¶ 1    *Held*:   Defendant's conviction for being an armed habitual criminal is affirmed where the trial court's denial of his motion to suppress evidence was proper because the police officer recovered the firearm from defendant after defendant stated he had a gun; defendant's challenge based on a *Miranda* violation is forfeited because it was not litigated before the trial court.

¶ 2    Following a bench trial, defendant Charles Evans was convicted of being an armed habitual

criminal (720 ILCS 5/24-1.7(a) (West 2016)) and sentenced to the mandatory minimum term of

six years' imprisonment. On appeal, defendant contends the trial court erred on two grounds when

it denied his motion to suppress evidence. Defendant first argues that the police officer conducted an unlawful pat-down search of his person because the officer had no reasonable articulable suspicion that defendant was armed and dangerous. Defendant also argues that his statement to police during the traffic stop that he possessed a gun was made in response to an improper custodial interrogation by the officer before defendant was advised of his *Miranda* rights. We affirm.

¶ 3     Defendant was charged with one count of being an armed habitual criminal, two counts of unlawful use or possession of a weapon by a felon (UUWF), and four counts of aggravated unlawful use of a weapon (AUUW). Defendant filed a pretrial "Motion to Suppress Physical Evidence." In his written motion, defendant argued that on April 28, 2017, Chicago police officers, without lawful authority, illegally stopped a vehicle in which defendant was a passenger. Defendant asserted that the officers thereafter illegally searched him without lawful authority and seized certain property that might incriminate him, specifically, a handgun and bullets. Defendant alleged that the police had no lawful authority to conduct the search and seizure because: (1) they did not have a warrant or any other authority; (2) there were no exigent circumstances that excused proceeding without a warrant; (3) no consent was given for the arrest, search, and seizure; and (4) the search and seizure were not incident to nor contemporaneous with the valid arrest of defendant. Defendant argued that the arrest, search, and seizure violated his rights under the fourth amendment of the United States Constitution (U.S. Const., amend. IV), the Illinois Constitution (Ill. Const. 1970, art. I, §§ 2, 6, 10), and the search and seizure statutes of the Illinois Code of Criminal Procedure (Code) (725 ILCS 5/108-1 *et seq.* (West 2016)). Defendant asked the court to suppress the seized evidence and all testimony relating to that evidence.

¶ 4    At the hearing on defendant's motion to suppress, defense counsel orally amended the written motion to also suppress a statement defendant made to police. Counsel added the words "my statement" to the prayer for relief in the written motion where defendant had asked that the seized evidence and related testimony be suppressed. The State acknowledged the amendment. The prosecutor stated, "I believe it's not a Fifth Amendment issue. Still falls under his Fourth Amendment claims in the body of the motion." Defense counsel did not disagree with the prosecutor's statement.

¶ 5    Defendant testified that about 11 p.m. on April 28, 2017, he was a passenger in Jayna Marshall's vehicle. Marshall was driving, defendant was in the front passenger seat, and defendant's five-year-old son was also in the vehicle. Marshall drove northbound on Indiana Avenue through the green light at the intersection with 137th Street. Marshall told defendant that a vehicle had pulled behind them with its lights turned off. Defendant looked in the outside mirror on the passenger door and observed a dark SUV with its headlights off behind them. After they drove over the Little Calumet River, the SUV behind them activated its flashing emergency lights. Marshall pulled her vehicle over to the side of the road slightly north of 134th Street. Two police officers approached Marshall's vehicle on foot, one on the driver's side and one on the passenger's side. The officers were not in uniform. Defendant assumed they were police officers because they were wearing vests and walkie-talkies and had guns.

¶ 6    The officer on the driver's side asked Marshall for her driver's license. She did not have it. The officer on the passenger's side looked inside Marshall's vehicle with a flashlight. The officer on the driver's side asked defendant if he had a driver's license. Defendant replied, "no, sir." That same officer asked defendant if he had a state identification card. Defendant replied, "yes," and

the officer asked him to produce it. Defendant told the officer that his identification card was inside his wallet in his right pocket, and he was going to retrieve his wallet. Defendant removed his wallet from his right front pocket and removed his identification card from his wallet. The officer on the driver's side took Marshall's identification card from her. Defendant stated that, at that time, he had not been doing anything wrong, he had not violated any laws, and the police did not claim to have a warrant to search or arrest him.

¶ 7    Defendant handed his identification card to the officer on the passenger's side, later identified as Officer Joseph Byrne. Byrne took the identification card, grabbed defendant's wrist through the open window, and told him to exit the vehicle. Byrne opened the passenger's door and ordered defendant out of the vehicle. As defendant exited the vehicle, Byrne used "some force" to get him out. Byrne did not remove his grip from defendant's wrist. After defendant exited the vehicle, Byrne brought defendant's wrist behind his back, told defendant to place his other arm behind his back, and handcuffed defendant. Byrne walked defendant a couple feet away from the vehicle and left him standing on the sidewalk. Byrne returned to Marshall's vehicle and searched inside from the front to the back on the passenger's side. The other officer removed Marshall from the vehicle and searched the driver's side. Marshall was standing at the rear of her vehicle.

¶ 8    Byrne walked back to defendant, stood behind him, and told defendant to spread his feet apart. Defendant was still holding his wallet in his hand which was handcuffed behind his back. Byrne asked defendant what was in his hand. Defendant replied, "[m]y wallet." Byrne next asked defendant what was in his back pocket. Defendant replied, "mail." Byrne then asked defendant, "[d]o you have anything on you that you shouldn't have?" Defendant testified, "In the process, he was patting my pocket, my front right pocket, and he was searching me." At that point, Byrne

recovered a handgun loaded with ammunition from the back of defendant's left hip. Defendant confirmed Byrne had been searching him before Byrne recovered the gun. Defendant denied that he said anything to Byrne before Byrne recovered the weapon. He further denied that he ever made any statements about the gun. Defendant also denied that the officers questioned him about the gun later that night.

¶ 9    On cross-examination, defendant acknowledged that when Byrne asked him, "[d]o you have anything on you?" defendant replied, "I got a gun on my hip." Defendant further acknowledged he made that statement before Byrne recovered the gun from him.

¶ 10    The State moved for a directed finding arguing that defendant's evidence did not establish a fourth amendment violation. The State argued the police had a basis for the detention because Marshall was driving without a driver's license. It argued that once the vehicle was stopped, the police had authority to remove all the passengers from the vehicle. The State further argued that it was immaterial if defendant was handcuffed because such action does not turn a *Terry* stop into a detention, but instead, is only one factor to consider. The State asserted that the only factor that turns a traffic stop or *Terry* stop into an arrest is the length of the detention, and here, there was no evidence regarding the length of the detention. The State argued that once defendant told Byrne he had a gun on his hip, the officer had a basis to recover that gun. The trial court denied the State's motion for a directed finding.

¶ 11    The State called Byrne as a witness who testified that shortly after 11 p.m. on April 28, 2017, defendant was the front seat passenger in a vehicle stopped by police for a cracked windshield. Byrne identified defendant in court. The driver of the vehicle was not able to produce a driver's license. Byrne asked defendant to exit the vehicle. The following colloquy then occurred:

"[PROSECUTOR:] Q    At some point did you have interaction with the defendant? Did you ask him if he had anything on him?

[BYRNE:] A    Yes.

Q    Did the defendant tell you that he had a gun on him?

A    Yes.

Q    Did you recover that gun?

A    Yes."

¶ 12    On cross-examination, Byrne testified that three officers were present for the traffic stop. Byrne and another officer approached the passenger's side of Marshall's vehicle and a third officer approached the driver's side. Byrne asked defendant for his license or identification. Defendant retrieved his identification card from his wallet and gave it to Byrne. After defendant exited Marshall's vehicle, Byrne asked him "if he possessed anything illegal." Defendant told Byrne he had a gun on his hip. Byrne recovered the weapon from the side of defendant's hip. Byrne confirmed that he did not see the weapon until after defendant told him he had a gun on him. Defendant subsequently made statements to police regarding the gun. Defendant was arrested at 11:14 p.m.

¶ 13    In closing argument, defense counsel argued that defendant was not engaged in any illegal activity when he was detained by police. Counsel argued that Byrne began searching defendant before defendant made any kind of statement. The prosecutor objected, asserting that counsel had misstated the evidence. The court overruled the objection and allowed counsel to continue with his argument. Counsel argued that defendant testified that Byrne asked him if he had anything illegal on him while Byrne was patting him down, and defendant stated that he had a gun while he

was being searched. Counsel noted that defendant was handcuffed and argued that Byrne conducted a custodial search and custodial interrogation.

¶ 14    The State adopted its argument from its motion for a directed finding. The prosecutor clarified, "[w]e are here to determine whether or not there was a Fourth Amendment violation[.]" The State argued that the vehicle was lawfully stopped for a cracked windshield. It reiterated that the police can order all the occupants out of a vehicle. The State argued there was no evidence regarding the duration of the stop, but it appeared to have been "a minute or two." The State pointed out that both Byrne and defendant testified that Byrne asked defendant if he had a gun, defendant said he did, and the gun was then recovered. The State argued the recovery of the gun was the basis for defendant's arrest and that the "two-minute detention" at the traffic stop was not a custodial arrest. The State further argued, "at the last minute counsel brought up some aspects of custodial interrogation. That's not present at all and that forms a completely different kind of analysis."

¶ 15    In response, defense counsel argued that the police may order people out of a vehicle, but they cannot handcuff the occupants of a vehicle. Counsel argued Byrne went beyond the scope of a *Terry* stop, and that handcuffing defendant constituted a custodial detention.

¶ 16    The trial court found that the testimony from defendant and Byrne was not "terribly inconsistent." The court then stated:

> "I am going to deny the motion for the following reasons: Based on the totality of the circumstances, the court finds that once the officers determined that neither of the occupants had a license and could legitimately drive the car, they have no basis but to get them out of the car. How they get them out of the car doesn't become dispositive for me.

Frankly at this time of the night, it's not surprising to me that they would cuff somebody in that quick a manner after they got them out of the car.

There's a statement made. Exactly when the statement is made is up in the air, but I don't think that's terribly dispositive because I think under the circumstances the officers had a right to pat down both of the occupants of the car. So the gun would have been found anyway even if the defendant hadn't made the statement."

¶ 17    Defendant filed a motion to reconsider the denial of his motion to suppress. Defendant conceded that the traffic stop was lawful and that Byrne acted within his authority when he ordered defendant out of the vehicle. Defendant argued that there was no testimony that justified Byrne's search of his person where Byrne did not testify that he feared for his safety. Defendant stated that there was no testimony that he said or did anything to raise a suspicion that he was a threat to Byrne. Defendant argued that, at the time of the search, he was handcuffed and could not reasonably be considered a threat. Defendant further argued that his statement that he had a gun in his waistband did not justify the search because his statement occurred during the illegal search and was a product of that search. In addition, defendant argued that the principle of "inevitable discovery" did not apply to this case because there was no evidence Byrne would have discovered the gun other than by the illegal search.

¶ 18    In ruling on the motion, the trial court stated, "I will not deny that this case is close." The court noted that the vehicle was stopped for a valid traffic offense and that no one in the vehicle had a driver's license. The court stated that, had defendant had a license, it might have felt differently about the search because the police could have turned the vehicle over to him. The court stated that it was "a little murky" as to what happened after defendant exited the vehicle. It found,

however, that there was "no doubt" defendant stated he had a gun, and that statement was in response to Byrne's question about whether he had something on him. The court then stated:

"one of the things that complicates this case is the existence of the statute under the Carry and Conceal Act which allows the police officers to ask people if they are carrying a weapon. That seems to be pretty clear. It's mentioned twice in the statute. So it doesn't – this case doesn't rise to the level, from my standpoint, of where a Defendant is patted down because of some suspicion necessarily; but it's a combination of factors. First of all, it is late at night. Secondly, there's nobody on the street. Thirdly, the police are protecting themselves. And it's one thing to say that he is cuffed, okay, and he is not a threat; but that's an easy thing to say. That's not necessarily the truth. Sometimes if people have weapons on them and they're cuffed, they can still reach the weapons. So I don't think the police acted unreasonably."

¶ 19    In addition, the court found that another factor to consider was that the amount of time involved in obtaining the gun was "very, very small." Based on the fact that defendant was legitimately asked out of the vehicle, the trial court denied defendant's motion to reconsider.

¶ 20    The parties agreed to proceed by way of a stipulated bench trial. The State presented a stipulation that the testimony presented at the motion to suppress hearing covered all the issues in the case, and that testimony would be the same evidence the court would hear at trial. The State presented the transcript from the suppression hearing as a stipulated exhibit. The State presented an additional stipulation that it would introduce certified copies of defendant's prior convictions for attempted first degree murder and manufacture and delivery of cocaine to serve as the predicate offenses for the armed habitual criminal offense.

¶ 21    The trial court found defendant guilty on all counts. In his motion for a new trial, defendant argued that the trial court erred when it denied his motion to suppress evidence and motion to reconsider that ruling. The trial court denied the posttrial motion. The court merged all counts for UUWF and AUUW into the armed habitual criminal offense and sentenced defendant to the mandatory minimum term of six years' imprisonment.

¶ 22    On appeal, defendant contends the trial court erred when it denied his motion to suppress evidence. Defendant argues that Byrne conducted an unlawful pat-down search because the officer had no reasonable articulable suspicion that defendant was armed and dangerous. Defendant also argues that his statement that he possessed a gun was made in response to an improper custodial interrogation by Byrne before defendant was advised of his *Miranda* rights.

¶ 23    Our review of the trial court's ruling on a motion to suppress evidence presents questions of both fact and law. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009). The trial court's factual findings are given great deference and will not be disturbed on review unless they are against the manifest weight of the evidence. *People v. Lindsey*, 2020 IL 124289, ¶ 14. However, the court's ultimate ruling on the motion is a question of law which we review *de novo*. *Id.* At a hearing on a motion to suppress, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, and drawing reasonable inferences therefrom. *People v. Ballard*, 206 Ill. 2d 151, 162 (2002). The court's factual findings are against the manifest weight of the evidence only where the opposite conclusion is apparent, or where the findings are arbitrary, unreasonable, or not based on the evidence. *People v. Aljohani*, 2021 IL App (1st) 190692, ¶ 37. This court "may affirm the trial court's ruling on a suppression motion 'on any basis appearing in the record,

- 10 -

whether or not the trial court relied on that basis or its reasoning was correct.' " *Id.* ¶ 38 (quoting *People v. Daniel*, 2013 IL App (1st) 111876, ¶ 37).

¶ 24 On a motion to suppress evidence, the burden of proving that the search and seizure were unlawful rests with the defendant. 725 ILCS 5/114-12(b) (West 2016); *People v. Cregan*, 2014 IL 113600, ¶ 23. "If the defendant makes a *prima facie* showing that the evidence was obtained in an illegal search or seizure, the burden shifts to the State to provide evidence to counter the defendant's *prima facie* case." *Cregan*, 2014 IL 113600, ¶ 23. Ultimately, however, the burden of proof remains with the defendant. *Id.*

¶ 25 Initially, defendant states that he is not challenging the validity of the traffic stop or Byrne's order to exit the vehicle. He argues, however, that Byrne conducted an unlawful pat-down search because Byrne had no reasonable articulable suspicion that defendant was armed and dangerous. Defendant argues that Byrne did not testify about any facts regarding defendant's conduct that could have reasonably created a fear or threat of violence that justified the pat-down search. He asserts that the trial court found Byrne searched defendant based on a concern for officer safety, but the evidence did not support that finding. Defendant notes that Byrne testified that he did not see the gun until defendant told him about it. Defendant argues, however, that Byrne began searching him before he asked if defendant had any contraband on him and before defendant stated that he had a gun.

¶ 26 The State responds that the trial court properly denied defendant's motion to suppress because the evidence showed that the pat-down and recovery of the gun occurred after defendant told Byrne he had a gun on his hip. Relying on *People v. Gonzalez*, 184 Ill. 2d 402 (1998), the State argues that, once defendant stated that he possessed a firearm, Byrne had the authority to

search defendant and recover that firearm based on a concern for officer safety. The State further argues that, even if defendant had not stated that he possessed a weapon, the search would have been lawful based on the totality of the circumstances, including that the traffic stop occurred late at night in a deserted area with a small child inside the vehicle, and both the driver and defendant were outside of the vehicle because neither of them possessed a driver's license. In addition, the State asserts that the legality of a pat-down search is evaluated under an objective standard, and Byrne's subjective belief regarding the safety of the situation is only one factor that may be considered when evaluating the search.

¶ 27     The fourth amendment of the United States Constitution and the Illinois Constitution protect citizens from unreasonable searches and seizures in their homes, effects, and persons. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Reasonableness is measured with an objective standard by analyzing the totality of the circumstances. *People v. Moss*, 217 Ill. 2d 511, 518 (2005). Generally, to be deemed a reasonable search and seizure under the fourth amendment, police must obtain a warrant supported by probable cause. *People v. Johnson*, 237 Ill. 2d 81, 89 (2010). However, in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court recognized an exception to the warrant requirement allowing police officers to briefly stop suspicious individuals to make reasonable inquiries to confirm or dispel their suspicions of criminal activity. The reasonableness of a traffic stop and detention of the vehicle's occupants are reviewed under the *Terry* principles. *People v. Jones*, 215 Ill. 2d 261, 270 (2005).

¶ 28     Whether a police officer can search an occupant of a vehicle is a separate consideration from the legality of the vehicle stop that is also reviewed for reasonableness under the *Terry* principles. *Gonzalez*, 184 Ill. 2d at 421. The *Terry* Court held that a police officer may conduct a

pat-down search of a person he is investigating at close range to determine if that person is carrying a weapon where the officer justifiably believes the person is armed and dangerous. *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001). The sole justification for a pat-down search under *Terry* is for the protection of police and others in the area, not to discover evidence. *People v. Flowers*, 179 Ill. 2d 257, 263 (1997). A search that exceeds the boundaries necessary for determining if a suspect is armed is unreasonable under *Terry*, and any evidence recovered during such a search will be suppressed. *Sorenson*, 196 Ill. 2d at 432. Although the reasonableness of the pat-down search is assessed under an objective standard, the police officer's subjective belief regarding the safety of the situation is one of the factors that may be considered among the totality of the circumstances known to the officer at the time of the search. *Gonzalez*, 184 Ill. 2d at 422.

¶ 29    In determining whether a pat-down search is reasonable, an officer does not need to be absolutely certain the person is armed; instead, the question is whether, under the circumstances, a reasonably prudent person would believe that his safety or that of others was in danger. *People v. Colyar*, 2013 IL 111835 ¶ 36 (citing *Terry*, 392 U.S. at 27). In each case, consideration must be given to the specific reasonable inferences that the officer is entitled to draw from the facts in light of his experience. *Sorenson*, 196 Ill. 2d at 433. The limitations of a search in any particular case depends upon the factual circumstances of that case. *Id.* at 440 (citing *Terry*, 392 U.S. at 29). When an officer asks a person during a traffic stop whether he is in possession of a weapon and receives an affirmative response, it is reasonable for the officer to pat down the person to uncover the weapon. *Gonzalez*, 184 Ill. 2d at 423.

¶ 30    Here, the record reveals that Officer Byrne recovered the weapon from defendant after defendant told the officer he had a gun on his hip. Byrne testified that after defendant had exited

- 13 -

the vehicle, Byrne asked defendant "if he possessed anything illegal." Defendant told Byrne he had a gun on his hip. Byrne then recovered the weapon from the side of defendant's hip. Byrne testified that he did not see the weapon until after defendant told him he had a gun on him. Defendant also testified that Byrne asked him, "[d]o you have anything on you that you shouldn't have?" Defendant acknowledged that he replied, "I got a gun on my hip." Defendant also acknowledged he made that statement before Byrne recovered the gun from him. The trial court found there was "no doubt" defendant stated he had a gun, and that defendant's statement was made in response to Byrne's question about whether he had something on him. The record shows that the trial court's finding was not against the manifest weight of the evidence. *Aljohani*, 2021 IL App (1st) 190692, ¶ 37. Moreover, when defendant told Byrne he was in possession of a gun, the officer then had the authority to pat down defendant and recover that weapon. *Gonzalez*, 184 Ill. 2d at 423. Based on this record, we find that Byrne's recovery of the firearm was not the result of an illegal pat-down search. Accordingly, the trial court's denial of defendant's motion to suppress evidence was proper.

¶ 31    Defendant next contends the trial court erred when it denied his motion to suppress because his statement to Byrne that he possessed a gun was made in response to an improper custodial interrogation by the officer before defendant was advised of his *Miranda* rights. The State responds that defendant forfeited this issue because it was not raised in his motion to suppress evidence, his motion to reconsider the trial court's denial of that motion, or his motion for a new trial. Alternatively, the State argues that *Miranda* warnings were not required under the circumstances in this case which involved general on-the-scene roadside questioning during a traffic stop rather than a custodial interrogation. *Gonzalez*, 184 Ill. 2d at 423.

¶ 32    In reply, defendant argues the issue is not forfeited because he raised the admissibility of his statement several times in the trial court, including: (1) when counsel argued at the suppression hearing that Byrne's pat down was "a custodial search and a custodial interrogation;" (2) in his written motion to reconsider when he argued that the State could not use his statement that he had a gun in his waistband to justify the search; and (3) in his motion for a new trial when he argued that his statement should have been excluded from trial. Based on these assertions, defendant claims the issue was properly raised in the trial court, "regardless of the specific arguments he made below." Alternatively, defendant argues that even if the issue is forfeited, this court may still consider it because forfeiture principles are binding on the parties, not the reviewing court. Defendant also asserts, without argument, that this court may consider the issue as plain error.

¶ 33    The record indicates that defendant never raised a *Miranda* challenge before the trial court. Defendant has raised this claim for the first time in this appeal. This court has previously held that where a defendant fails to raise an allegation in his written motion to suppress and does not raise the issue in his posttrial motion, the issue is waived. See *People v. Williams*, 272 Ill. App. 3d 868, 876 (1995); *People v. Cleesen*, 177 Ill. App. 3d 103, 114 (1988).

¶ 34    In analyzing the contents of a motion to suppress, the Fourth District of this court stated:

        " 'A motion to suppress is, in effect, a pleading to the extent that it frames the issues to be determined in a pretrial hearing on the motion. The fundamental role of a pleading is to give an opposing party notice of the pleader's position concerning the facts and law so that the opposing party can begin to prepare his defense. A pleading thus both defines and limits the areas of consideration at a trial or other evidentiary hearing ***, by enabling the

court to determine the relevance of offered evidence.' " *People v. Ramirez*, 2013 IL App (4th) 121153, ¶ 60 (quoting *State v. Johnson*, 519 P.2d 1053, 1057 (Or. Ct. App. 1974)).

¶ 35 Our supreme court has held that where a defendant raises arguments on appeal that are distinct from the arguments he raised in his motion to suppress before the trial court, the defendant has not adequately preserved his claims for review. *People v. Hughes*, 2015 IL 117242, ¶ 45. In *Hughes*, the defendant, who was charged with and ultimately convicted of first degree murder, filed a motion to suppress claiming that his confession was involuntary. *Id.* at ¶¶ 1-2. Before the trial court, the defendant argued that his statements were involuntary because the police questioned him off camera and without advising him of his *Miranda* rights, and due to physical coercion from handcuffs being kept on him for an excessively long time. *Id.* at ¶ 2. The trial court denied his pretrial motion to suppress and denied his posttrial motion where the defendant raised the issue again. *Id.* On appeal, the defendant argued that his confession was involuntary and should have been suppressed for reasons different than what he argued before the trial court, including his age, educational level, sleep and food deprivation, prior substance abuse, deceptive conduct by police, and lack of experience with the criminal justice system. *Id.* at ¶ 25. The State argued that the defendant waived the issue for appeal because he did not present these reasons for suppression to the trial court. *Id.* at ¶ 26. The appellate court, with one justice dissenting, found that the issue was not forfeited because he had raised the issue of voluntariness in his posttrial motion. The court concluded that the confession should have been suppressed and reversed and remanded for a new trial. *Id.* at ¶ 27.

¶ 36 On appeal, the supreme court found that the defendant's reasons for suppression in the trial and appellate courts were almost entirely distinct from one another. *Id.* at ¶ 40. The court noted

that the defendant presented no evidence or arguments to the trial court for the claims he raised on appeal. *Id.* at ¶ 41. The court therefore found that when the defendant failed to raise his claims in the trial court, he deprived the State of its opportunity to present evidence and arguments challenging those claims. *Id.* at ¶ 46. The court further found that the defendant also deprived the trial court of the opportunity to decide the issue on those bases. *Id.* The court concluded that the defendant did not adequately preserve his claims for appeal, and that the trial court did not err when it denied the defendant's motion to suppress. *Id.* at ¶ 47.

¶ 37    Similar to *Hughes*, in this case, defendant has raised an issue on appeal that was not raised in his motion to suppress and not litigated before the trial court. Defendant argues that his statement that he had a gun on his hip was inadmissible because it was made in response to an illegal custodial interrogation by Byrne prior to being advised of his *Miranda* rights. Defendant argues that Byrne forcibly removed him from the vehicle, immediately handcuffed him with no articulable basis for doing so, did not advise him of his *Miranda* rights, and asked him a question he should have known was reasonably likely to illicit an incriminating response.

¶ 38    Because the *Miranda* issue was not litigated below, the trial court never had the opportunity to address defendant's argument or rule on the issue. The record shows that when defense counsel orally amended the motion at the suppression hearing by adding the words "my statement" to the prayer for relief, the prosecutor stated, "I believe it's not a Fifth Amendment issue. Still falls under his Fourth Amendment claims in the body of the motion." Defense counsel did not disagree with this statement. In closing, the prosecutor argued, "[w]e are here to determine whether or not there was a Fourth Amendment violation[.]" In response to counsel's closing remark that Byrne had conducted a custodial search and custodial interrogation, the prosecutor argued, "at the last minute

counsel brought up some aspects of custodial interrogation. That's not present at all and that forms a completely different kind of analysis." We therefore find defendant failed to preserve the issue for appeal, and it is forfeited. *Hughes*, 2015 IL 117242, ¶ 47.

¶ 39    Defendant asserts, in two sentences, that admission of his statement obtained during a custodial interrogation prior to being advised of his *Miranda* rights constitutes plain error, and therefore, this court may review the issue even if it is forfeited. He makes no further plain error argument.

¶ 40    Our supreme court has repeatedly held that "when a defendant fails to present an argument on how either of the two prongs of the plain-error doctrine is satisfied, he forfeits plain error review." *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010) (citing *People v. Nieves*, 192 Ill. 2d 487, 502-03 (2000)). The court explained that "[a] defendant who fails to argue for plain-error review obviously cannot meet his burden of persuasion." *Hillier*, 237 Ill. 2d at 545. The court further advised that where the appellate court finds that the defendant forfeited the issue, it "must hold the defendant to his burden of demonstrating plain error." *Id.* at 549.

¶ 41    Here, defendant has presented no argument on how either prong of the plain error doctrine is satisfied. Defendant's conclusory statement that plain error applies fails to satisfy his burden of persuasion. We therefore honor defendant's forfeiture of the issue.

¶ 42    Based on this record, we conclude that Byrne's recovery of the firearm after defendant stated that he had a gun on his hip was reasonable and lawful. Accordingly, the trial court's denial of defendant's motion to suppress evidence was proper.

¶ 43    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 44    Affirmed.